**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Gerard Boulanger

      v.                                Civil No. 06-cv-308-JD

Harley G. Lappin, Director,
Federal Bureau of Prisons, et al.

**REPORT AND RECOMMENDATION**

Proceeding pro se, Gerard Boulanger has filed this action pursuant to both Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 338 (1971), against employees of the Federal Bureau of Prisons ("BOP"), and 42 U.S.C. § 1983, against employees of the Strafford County Department of Corrections ("SCDC").[1]  The complaint is before me for preliminary review to determine whether, among other things, it states any claim upon which relief might be granted.  See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule

---

[1]Boulanger names the following defendants to this action: Harley G. Lappin, Director, Federal Bureau of Prisons, Robert Gilbert, Director, United States Marshal Service for the District of New Hampshire, J. Reaster, Director, Strafford County Department of Corrections ("SCDC"), SCDC Superintendent Warren Dowaliby, SCDC Capt. D. Rollins, SCDC Classification Specialist Linda Lee, SCDC Lt. Donna Roy, SCDC Lt. J. Sullivan, SCDC Sgt. J. McPherson, SCDC Cpl. J. Pelkie.

("LR") 4.3(d)(2).  For the reasons stated below, I direct, in an
Order issued simultaneously with this Report and Recommendation,
that the following claims: punitive segregated housing without a
hearing, excessive restraints, lack of exercise, and sleep
deprivation due to lights and searches in Boulanger's cell,
proceed against defendants Gilbert, Dowaliby, Rollins, Lee, Roy,
Sullivan, McPherson, and Pelkie in their individual capacities.
I recommend that the defendants Lappin and Reaster be dismissed
from this action.  I further recommend that the claims alleging:
endangerment, inadequate law library, denial of access to the
courts, deprivation of property, and liability of the defendants
in their official capacities, be dismissed from this action.

<u>Standard of Review</u>

     Under this Court's local rules, when an incarcerated
plaintiff commences an action pro se and in forma pauperis, the
magistrate judge is directed to conduct a preliminary review and
to prepare a report and recommendation determining whether the
complaint or any portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the
> action is frivolous, malicious, or fails to state
> a claim upon which relief may be granted, or seeks
> monetary relief from a defendant who is immune
> from such relief under 28 U.S.C. § 1915A(b); or

(ii) it fails to establish subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2).  In conducting the preliminary review, the Court
construes pro se pleadings liberally.  See Ayala Serrano v.
Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following
Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  Ahmed
v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied,
Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions
made by the plaintiff and inferences reasonably drawn therefrom
must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3
(1st Cir. 1996) (stating the "failure to state a claim" standard
of review and explaining that all "well-pleaded factual
averments," not bald assertions, must be accepted as true).  This
review ensures that pro se pleadings are given fair and
meaningful consideration.  See Eveland v. Dir. of C.I.A., 843
F.2d 46, 49 (1st Cir. 1988).

Background

On September 24, 2003, Boulanger, was incarcerated at the Strafford County House of Corrections ("SCHC") while awaiting trial on federal criminal charges.  From September of 2003 until December of 2003, Boulanger was housed in the "all purpose room" at the SCHC, which was a gym and recreation room that had been converted to house a dozen inmates.  In December of 2003, Boulanger was moved to E-Pod, a 12-cell housing unit that held twenty inmates.

In April of 2004, Boulanger alleges that he was moved to administrative segregation, and was housed in a punitive housing area.  Boulanger asked a number of SCHC employees why he was transferred to punitive housing and was given answers that, although they conflicted with each other, were all based on Boulanger's allegedly maladaptive behavior at the SCHC.  In any event, Boulanger reports that at no time was he provided with a classification hearing or disciplinary hearing regarding these or any charges regarding his behavior during the time he was housed at the SCHC.  In July of 2004, Boulanger was moved to a new SCHC building, but was still housed in administrative segregation, which Boulanger describes as solitary confinement.  Boulanger was

housed in these conditions until April 2005, the duration of his stay at the SCHC.

Boulanger alleges that during the entire eighteen month period that he was held pretrial at the SCHC, he was denied the ability to exercise either indoors or outdoors, to the detriment of his physical well-being.  Further, Boulanger alleges that for the last six to twelve months of his incarceration, his cell light was kept on twenty-four hours a day resulting in sleep deprivation, and that during that time he was subjected to cell searches every two hours, twenty-four hours a day.  As a result, Boulanger alleges that he suffered sleep deprivation which negatively impacted his health.  Again, Boulanger alleges that he was not afforded any hearing prior to being housed in conditions which resulted in punitive deprivation of sleep and humane living conditions.

Boulanger also alleges that during the last six months of his pretrial detention, he was kept chained to his bed in four-point restraints except for one hour a day when he was allowed out of his cell on his housing pod.  Boulanger says that his hands and feet were even shackled together when he was eating. Boulanger names defendants Sullivan, McPherson and Pelkie as the

individuals responsible for excessively restraining him.
Boulanger claims this restraint amounted to pretrial punishment
without the benefit of a due process hearing.  Boulanger alleges
that his federal criminal defense attorney witnessed him in four-
point restraints "under very dangerous circumstances" and as a
result filed complaints with SCHC Superintendent Dowaliby and the
United States Marshal's Service, but no action was taken to
relieve Boulanger from the restraints.

Boulanger alleges that during his stay at the SCHC, he
repeatedly requested access to a law library or legal resources.
Boulanger was told that the SCHC possessed only three books which
contained information defining criminal charges and punishment
but that did not cover any other legal subject.  Boulanger
alleges that he was prejudiced in his federal criminal
prosecution by his lack of access to legal materials.
Specifically, Boulanger alleges that he assented to certain
stipulations at trial that he would have opposed had he been able
to fully research the legal issues in his case.

Finally, Boulanger alleges that in October of 2004, his cell
was damaged and he was accused of causing the damage but not
afforded a hearing to make a determination of whether, in fact,

he had caused the damage.  At the same time, his legal materials and various items of personal property were confiscated from his cell and destroyed.

Boulanger alleges that in addition to the complaints filed by his attorney regarding the restraints, Boulanger also sought redress for the challenged conditions of his confinement within the SCDC hierarchy.  Boulanger alleges that he filed numerous request slips and grievances, as well as oral requests for assistance with defendants Dowaliby, Rollins, Lee, Sullivan and Ray, none of which resulted in any response or any improvement to the conditions of his confinement.  Boulanger alleges that Sullivan told him that inmate grievance forms were routinely thrown away without response.  Boulanger also claims that he was told that defendant Reaster was responsible for the treatment to which Boulanger was subjected during his incarceration at SCHC.

## Discussion[2]

### 1.  Supervisory Liability

Boulanger has named a number of defendants to this action in

---

[2]The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Boulanger disagrees with this identification of the claims, he must do so by proper objection to this Report and Recommendation or by properly moving to amend his complaint.

their supervisory capacities.  That is, Boulanger has alleged

generally that the defendants were in charge of supervising what

occurred in the SCHC or in a specific unit of the SCHC.[3]

Further, Boulanger has alleged that each of the defendants,

excepting Lappin and Reaster, was specifically advised by

Boulanger of his complaints regarding his conditions of

confinement but failed to remedy the problem.  For most of the

defendants to this action, Boulanger has not alleged whether they

were present or directly involved in the violations alleged.

Accordingly, I find that Boulanger, with a few exceptions where

he has been more specific, has attempted to allege that the

defendants are liable in their individual supervisory capacities

for the civil rights violations alleged.

"Supervisory liability under § 1983 cannot be predicated on

a *respondeat* theory, but only on the basis of the supervisor's

own acts or omissions."  <u>Aponte Matos v. Toledo Davila</u>, 135 F.3d

---

[3]Plaintiff has not, to date, been very specific as to what
particular actions of each defendant resulted directly in the
alleged constitutional violations.  I caution Boulanger that,
notwithstanding any finding I make of potential liability for
purposes of preliminary review, in order to ultimately prove his
claims against the defendants, he will likely have to show, with
specificity, the actions of each defendant that render him or her
responsible for the violations alleged.

182, 192 (1st Cir. 1998) (internal citations omitted).  A
supervisor must be "either a primary actor involved in, or a
prime mover behind, the underlying violation."  <u>Camilo-Robles v.</u>
<u>Zapata</u>, 175 F.3d 41, 43-44 (1st Cir. 1999).  There must be "an
affirmative link, whether through direct participation or through
conduct that amounts to condonation or tacit authorization" to
the violation alleged.  <u>Id.</u> at 44.

Here, Boulanger's claims suffice to allege that the
violations and behavior he complains of were committed with at
least the condonation or tacit authorization of defendants
Gilbert, Dowaliby, Rollins, Lee, Roy, Sullivan, McPherson, and
Pelkie, because Boulanger alleges that those defendants were
either advised of the conditions of Boulanger's confinement or
were responsible, in their roles as supervisors, for those
conditions.

Two of the named defendants, Lappin and Reaster, have not
been sufficiently alleged to have had supervisory roles over the
conditions complained of, or to have had any direct involvement
with Boulanger's confinement, to warrant their remaining in this
case as defendants.  As to Lappin, while Boulanger generally
alleges that he is responsible for the custody of federal

prisoners, it is not clear that his position as the director of federal prisons gives him supervisory authority over conditions at the SCHC for federal pretrial inmates.  Boulanger also does not allege that he ever complained to Lappin or otherwise made Lappin aware of the conditions to which he was subjected at the SCHC.  Boulanger states that he was told that defendant Reaster, the SCDC director, was "calling the shots" regarding Boulanger's treatment by SCHC officials.  This assertion is insufficient to create a nexus between any action or omission on the part of Reaster and Boulanger's subjection to unconstitutional conditions of confinement to allow this action to proceed against Reaster at this time.  Accordingly, I recommend that Lappin and Reaster be dismissed from this action.

2.   Bivens Claims

Plaintiffs may seek redress from federal government officials who violate their federal constitutional rights under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 338 (1971), which creates a cause of action against federal officers, acting in their individual capacities, for constitutional violations. Boulanger alleges a Bivens action against defendant Gilbert, the Director of the United States Marshal's Service for the District

of New Hampshire.  Boulanger alleges that Gilbert is responsible for the civil rights violations alleged in his capacity as the federal officer responsible for Boulanger's treatment while he was detained pretrial at the SCHC on federal charges.

3.   <u>Section 1983 Claims</u>

42 U.S.C. § 1983 provides for a private cause of action against individuals, acting pursuant to the authority of state law, who violate the federal constitutional or statutory rights of an individual.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Boulanger asserts that Dowaliby, Rollins, Lee, Roy, Sullivan, McPherson and Pelkie are responsible, in their roles as state actors, for violations of his federal constitutional rights at the SCHC.  Accordingly, his claims against the SCDC defendants arise under § 1983.

4.   <u>Boulanger's Pretrial Status</u>

Boulanger states that he was a pretrial detainee when the challenged events occurred at the SCHC.

>A pretrial detainee has a Fourteenth Amendment right to be free from punishment prior to conviction.  While a pretrial detainee may be disciplined for a specific institutional infraction committed during the period of his detention, the discipline imposed must be roughly proportionate to the gravity of the infraction.  An arbitrary, or disproportionate sanction, or one that furthers no legitimate penological objective, constitutes punishment (and, thus, is proscribed by the Fourteenth Amendment).

<u>Surprenant v. Rivas</u>, 424 F.3d 5, 13 (1st Cir. 2005) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 535, 538-9 (1979) and <u>Collazo-Leon v. U.S. Bureau of Prisons</u>, 51 F.3d 315, 318 (1st Cir. 1995)). Accordingly, I find that Boulanger's complaints about the conditions of his confinement arise under the Fourteenth Amendment.

5.   <u>Conditions of Confinement</u>

"A pretrial detainee's claim that he has been subjected to unconstitutional conditions of confinement implicates Fourteenth Amendment liberty interests. . . . In order to establish a constitutional violation, a plaintiff's claim must meet both objective and subjective criteria."  <u>Surprenant</u>, 424 F.3d at 18

12

(citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)).  The
plaintiff must establish that the conditions of his confinement
deny him the minimal necessities required for civilized living
from an objective standpoint, and then must show that the
defendant was deliberately indifferent to the plaintiff's health
or safety in creating or allowing the challenged conditions.
<u>Surprenant</u>, 424 F.3d at 18–19 (citations omitted).

    A.   <u>Punitive Segregation</u>

    Ordinarily, when a prisoner is subjected to disciplinary
sanction, he must prove that the sanction itself was so atypical
of the normal incidents of prison life, and imposed such a
hardship, that he was entitled to due process in order for the
sanction to be constitutionally effected.  <u>Sandin v. Conner</u>, 515
U.S. 472, 483–84 (1995).  <u>Sandin</u>, however, only applies to
convicted inmates who might expect a certain amount of punishment
as typical of the normal incidents of prison life.  Pretrial
detainees, to the contrary, have a constitutionally-protected
liberty interest in avoiding any punishment.  <u>Surprenant</u>, 424
F.3d at 17.

    In <u>Wolff v. McDonnell</u>, the Supreme Court identified the due
process requirements for a disciplinary hearing in a prison.  418

U.S. 539, 564 (1974).  Those requirements include written notice
of the charges at least twenty-four hours in advance of the
hearing, the ability to call witnesses and present evidence, and
that the hearing be presided over by an impartial decisionmaker.
Id. at 566, 570-71; Surprenant, 424 F.3d at 16.  It goes without
saying that a pretrial prisoner who is denied any hearing at all
prior to the imposition of punishment was denied the due process
guaranteed by Wolff.

Boulanger alleges that he spent the majority of his eighteen
months at SCHC in punitive segregated confinement based on vague
allegations that he had committed an institutional offense.
Boulanger alleges that he was placed into punitive housing
segregation based on his alleged bad behavior, but without ever
receiving a classification or disciplinary hearing where he would
be able to challenge the accusations resulting in his punitive
housing assignment.

Boulanger's pretrial status entitled him to a due process
hearing prior to the imposition of punitive housing or conditions
of confinement.  Accordingly, I find that Boulanger has
sufficiently alleged the deprivation of procedural due process
protections by Lt. Roy, the SCHC disciplinary officer, and the

supervisory defendants at the SCHC, to allow this claim to proceed against those defendants.

B.  <u>Restraints</u>

Boulanger alleges that defendants McPherson, Sullivan and Pelkie were responsible for his being placed in four-point restraints for twenty-three hours a day during the last six months of his confinement, and for his being placed in excessive restraints while he was eating during that six-month period. Boulanger states that this restraint system was punitive, and imposed without a due process hearing, in violation of his Fourteenth Amendment right not to be punished as a pretrial detainee.  Because, as discussed above, Boulanger had a right to be free from punishment at the SCHC absent due process, I find that he has stated a claim against defendants McPherson, Sullivan, Pelkie, Gilbert, Dowaliby, and the other supervisory defendants to this action for excessive and punitive restraints in violation of the Fourteenth Amendment.

Boulanger also implies that the restraint system placed him in danger because his attorney saw Boulanger restrained "under very dangerous circumstances."  Boulanger has not elaborated or provided any specific information regarding how he was placed in

danger by virtue of being restrained, and I recommend that any claim Boulanger intended to raise for being placed into a dangerous situation be dismissed as inadequately articulated.

   C.   Lack of Exercise

   Boulanger alleges that during the eighteen months he was housed at the SCHC he was denied any exercise at all.  At most, Boulanger states he was permitted to leave his cell for an hour a day, but was not given any access to either indoor or outdoor exercise space or facilities.  As a result, Boulanger alleges that his physical health suffered.  Because it is possible that Boulanger can allege that the denial of exercise for eighteen months was an intolerable health hazard, see Surprenant, 424 F.3d at 20-21, I find that he has stated a Fourteenth Amendment claim for the denial of adequate exercise and, in an Order issued simultaneously with this Report and Recommendation, I will direct that the claim be served on the defendants to this action, in their individual supervisory capacities.

   D.   Sleep Deprivation

   Boulanger alleges that the conditions in which he was held violated his constitutional right to humane conditions of confinement because the lights in his cell were left on twenty-

four hours a day for a period of six months, and his cell was
searched every two hours, twenty-four hours a day, for a period
of one year[4], resulting in severe sleep deprivation and therefore
a risk to his health.  Some deprivations of comfort are to be
expected during incarceration, even when the incarceration is
intended to be nonpunitive pretrial confinement.  However, where
a particular condition persists to the point where it is
punitive, and not a mere annoyance or discomfort, a pretrial
inmate can state a claim upon which relief might be granted for a
Fourteenth Amendment violation.  Id.  Boulanger has alleged that
he was subjected to punitive conditions of confinement which
persistently and severely deprived him of sleep.  In an Order

---

[4]Boulanger has only complained of the cell searches in the
context of the searches depriving him of sleep.  Boulanger has
not articulated a Fourth Amendment challenge to the
reasonableness of the searches.  Even if he had, however, the
Supreme Court has found that an inmate's status as a pretrial
detainee does not entitle him to the full expectation of privacy
in his prison cell that he would have in his home, and that his
expectation of privacy is "diminished" by his incarceration.
Hudson v. Palmer, 468 U.S. 517, 524 n.6 (1984) (citing Bell v.
Wolfish, 441 U.S. 520, 556-57, 560-61 (1979) (searches of
pretrial detainees' cells did not violate the Fourth Amendment
and did not constitute punishment violative of the Due Process
Clause)).  The facts presented in Boulanger's complaint are
insufficient to state a claim that the searches were
unreasonable, or that Boulanger had an expectation of privacy in
his cell, and I would have recommended that a Fourth Amendment
claim challenging the cell searches be dismissed, had it been
raised.

issued simultaneously with this Report and Recommendation, I will direct that this claim be served against the defendants to this action.

6.   <u>Denial of Access to Law Library</u>

Boulanger alleges that he was denied an adequate law library at the SCHC.  He alleges that the library contained inadequate materials to conduct legal research, and that as a result, his defense in his criminal case was impaired.  While a denial of access to the courts claim depends on the plaintiff alleging that his legal status was harmed by a deprivation of legal materials, see <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996), plaintiff must also allege that the availability of legal resources, including the law library and other sources of legal information, taken as a whole, were inadequate to meet his need to conduct research.  <u>Bounds v. Smith</u>, 430 U.S. 817, 832 (1977).  Here, Boulanger complains that his criminal defense was compromised.  However, Boulanger also concedes that he had a federal public defender representing him in his criminal matter.  Because I find that having court-appointed counsel was adequate to protect Boulanger's access to legal materials and to the resources necessary to defend a criminal case, I find that he has failed to

state a claim for an inadequate law library at the SCHC or a denial of access to the Courts.  Accordingly, I recommend that those claims be dismissed.

7.   Property Claims

Boulanger alleges that during his incarceration at SCHC, he was accused of damaging his cell, and that without any hearing, his property, including personal property and legal materials[5] provided to him by his attorney, was confiscated and destroyed. Claims alleging the theft, damage, loss or other misappropriation of property are not actionable under 42 U.S.C. § 1983 where, as here, the state has an adequate post-deprivation remedy available.  Hudson, 468 U.S. at 533; see N.H. Rev. Stat. Ann. 541-B:9(II) & (IV), and 541-B:14 (1997) (providing a post-deprivation means of recouping property loss attributable the State).  Therefore, I recommend this claim be dismissed from this action.

---

[5]I note that some courts have found a cause of action to accrue where a plaintiff alleges the confiscation or destruction of his legal materials by prison officials if that action infringes a plaintiff's right of access to the courts.  See Simmons, 804 F.2d at 183 (collecting cases).  Boulanger makes no allegation that the destruction of his legal materials interfered with his right of access to the courts and I will therefore treat this claim only as a claim alleging the deprivation of personal property.

8.   <u>Official Capacity Suits/Municipal Liability</u>

Boulanger has named all of the defendants to this action in both their individual and official capacities.  An official capacity suit is one that essentially sues the government entity in the stead of a person responsible for the alleged conduct. Boulanger, therefore, in attempting to sue the defendants in their official capacities has actually alleged a suit against the federal government, in the case of the federal defendants, and Strafford County, in the case of the state-employed defendants.

Municipalities and local government entities are "persons" within the meaning of § 1983.  <u>See</u> <u>Monell v. Dep't of Soc.</u> <u>Servs.</u>, 436 U.S. 658, 690 (1978).  Under New Hampshire law, counties, such as Strafford, are considered local governmental units.  <u>See</u> N.H. Rev. Stat. Ann. ("RSA") 507-B:1 (1997) (defining "governmental unit" as "any political subdivision within the state including any county, city, town . . ., but [not including] the state or any department or agency thereof.").  In order to maintain an official capacity suit against the county of Hillsborough as a municipality under § 1983, the claim must be grounded upon an unconstitutional municipal custom or practice and two requirements must be met.  "First, the custom or practice

20

must be attributable to the municipality, i.e., it must be 'so
well settled and widespread that the policymaking officials of
the municipality can be said to have either actual or
constructive knowledge of it yet did nothing to end the
practice.'" Miller v. Kennebec County, 219 F.3d 8, 12 (1st Cir.
2000) (quoting Bordanaro v. Mcleod, 871 F.2d 1151, 1156 (1st
Cir.), cert. denied, Everett v. Bordanaro, 493 U.S. 820 (1989)).
Second, the custom must have been the cause of and "the moving
force" behind the deprivation of constitutional rights. Wood v.
Hancock County Sheriff's Dep't, 354 F.3d 57, 64 (2003) (citing
Miller, 219 F.3d at 12.

     Boulanger has not asserted any facts that demonstrate that
the county of Strafford engaged in a custom or policy of allowing
or enabling employees of the SCHC to violate the plaintiff's
rights in the manner described in Boulanger's complaint.  I find,
therefore, that Boulanger has not stated a claim against the
county of Strafford, and I recommend that the official capacity
suits be dismissed against the SCDC defendants and that this
action proceed against those defendants who remain in the case
only in their individual capacities.

Further, while a <u>Bivens</u> action allows constitutional claims to be raised against federal officials in their individual capacities, <u>Bivens</u> does not override the federal government's sovereign immunity which prohibits suits against the United States, its agencies, or federal officers sued in their official capacities.  <u>McCloskey v. Mueller</u>, 446 F.3d 262, 271-72 (1st Cir. 2006).  I therefore find that Boulanger cannot bring suit against Gilbert in his official capacity.  I recommend that the official capacity claim against him be dismissed.

<u>Conclusion</u>

For the foregoing reasons, I recommend that defendants Lappin and Reaster, and that the claims alleging endangerment, inadequate law library, denial of access to the courts, deprivation of property, and liability of the defendants in their official capacities, be dismissed from this action.  In an Order issued simultaneously with this Report and Recommendation, I direct service of the remaining claims against the remaining defendants named in the complaint.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to

appeal the district court's order.   See Unauth'd Practice of Law

Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United

States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge

Date:      November 15, 2006

cc:        Gerard Boulanger, pro se