UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

GERARD BOULANGER, :
            Plaintiff, :
                                    :
        v.                          :     NH 06-cv-00308-WES
                                    :     RI MC 07-23
U.S. MARSHALS SERVICE, :
NEW HAMPSHIRE DISTRICT,[1] et al., :
            Defendants. :


## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

Before the Court is a Motion for Summary Judgment (District of New Hampshire Document ("D.N.H. Doc.") #63) ("Motion for Summary Judgment" or "Motion") filed by Defendants Warren Dowaliby, Jeffrey McPherson, Linda Lee, Bruce Pelkie, and Donna Roy, employees of the Strafford County Department of Corrections ("SCDC") (collectively the "SCDC Defendants"). Plaintiff Gerard Boulanger ("Plaintiff" or "Boulanger"), a federal prisoner, has filed an objection to the Motion. See Objection to Defendants['] Motion for Summary Judgement (D.N.H. Doc. #65) ("Plaintiff's Objection").

The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated herein, I recommend that the Motion be denied in part and granted in part.

## I.    Facts and Travel

---

[1] Although all federal Defendants have now been dismissed from this action, see Order and Memorandum Granting Federal Defendant's Motion to Dismiss (District of New Hampshire Document ("D.N.H. Doc.") #54) ("Order and Memorandum of 11/15/07")(dismissing last federal Defendant), the Court identifies the case as it was originally filed, see Complaint.

Plaintiff was arrested in 2003 on charges related to a robbery involving controlled substances.[2]  See Defendants' [Amended] Statement of Undisputed Facts (D.N.H. Doc. #67) ("Amended SUF") ¶ 1.  He was held at the SCDC as a pretrial detainee, under an agreement with the United States Marshal's Office for the District of New Hampshire.  See id. ¶ 2.  From October 2003 until March 31, 2004, Plaintiff was housed in medium security.  See id. ¶ 4.  Thereafter, he was held in maximum security confinement as a "security threat."  See id. ¶ 8. Plaintiff continued to be confined in maximum security when the SCDC moved to a new facility two to three months after he was first placed in maximum security.  See id. ¶ 18.[3]

According to the SCDC Defendants, Plaintiff was initially placed in handcuffs and shackles while in maximum security to restrain him further during the period shortly after his escape attempt.  Amended SUF ¶ 17.  Plaintiff disputes that he attempted to escape and alleges that he was held in handcuffs and shackles for a far longer period of time.  Response to Amended SUF ¶ 10.

On October 21, 2004, the SCDC discovered that the window in Plaintiff's cell had been completely broken out.[4]  See Amended

---

[2] Plaintiff was convicted in October, 2004, of armed robbery involving a controlled substance, possession with intent to distribute a controlled substance, and being a felon in possession of a firearm.  See Order and Memorandum of 11/15/07 at 1; see also U.S. v. Boulanger, 444 F.3d 76, 78 (1st Cir. 2006).

[3] Although Plaintiff disputes Amended SUF ¶ 18, he does not appear to dispute the fact that the SCDC moved to a new facility two to three months after he was first confined in maximum security.  See Plaintiff['s] Response to Defendants['] Amended SUF (D.N.H. Doc. #70) ("Response to Amended SUF") ¶ 17 (disputing that he was ever given a classification hearing, notice thereof, or documentation pertaining to a classification update, but not disputing that he was transferred to the new jail).

[4] Plaintiff disputes that he was the only one who occupied or had access to the cell.  See Response to Amended SUF ¶ 21.

2

SUF ¶¶ 20-21 (citing Declaration of Warren Dowaliby ("Dowaliby
Decl.") ¶ 29; Declaration of Jeffrey McPherson ("McPherson
Decl.") ¶ 8).  An iron bar in the window of the cell was bent and
gouged.  See id. ¶ 22.  Broken glass, a bloody towel, and sheets
tied together to make a rope were found in Plaintiff's trash
can.[5]  See id. ¶ 23.

The SCDC has low wattage overhead lights, which stay on
throughout the night after the regular lights go off, in every
cell.  See id. ¶ 27.  The lights remain on for safety and
security reasons.  See id. ¶ 28.  Correctional officers performed
regular cell checks and/or searches of Plaintiff's cell,
including at night.  See id. ¶ 29.  Before April 1, 2004,
Plaintiff's cell was checked or searched with the same frequency
as the cells of other SCDC inmates.  See id. ¶ 31.  After April
1, 2004, cell checks were done more frequently.[6]  See id. ¶ 32.

On August 21, 2006, Plaintiff, acting pro se, filed a
complaint pursuant to Bivens v. Six Unknown Named Agents of
Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971),
and 42 U.S.C. § 1983 in the United States District Court for the
District of New Hampshire, alleging that ten federal and state

---

[5] The SCDC Defendants also state that "[t]he wall mounted
chair in the cell had been pulled from the wall."  Amended SUF ¶
24 (citing McPherson Decl. ¶ 9).  Plaintiff disputes that there
was a wall mounted chair in the cell.  See Response to Amended
SUF ¶ 24 ("There never was a wall mounted chair in Plaintiff['']s
cell ....").

[6] The SCDC Defendants state that after April 1, 2004, cell
checks "were done more regularly due to concern over Plaintiff's
conduct."  Amended SUF ¶ 32.  Plaintiff disputes that the
frequency of the searches was due to his conduct.  See Response
to Amended SUF ¶ 32.  He alleges that his cell was searched every
two hours, twenty-four hours a day, depriving him of sleep and
causing sensory deprivation.  See id. ¶ 30.  He further alleges
that the searches were performed in a retaliatory fashion.  See
id.

Defendants violated his civil rights during his pretrial detention at the SCDC.  See Complaint (D.N.H. Doc. #1) at 1-14; see also D.N.H. Docket.  All claims against Defendant Lappin were dismissed on December 12, 2006, when District Judge Joseph A. DiClerico, Jr., accepted the Report and Recommendation of Magistrate Judge James R. Muirhead, as were the claims against Defendant Reaster.  See Order dated December 12, 2006 (D.N.H. Doc. #16) ("Order of 12/12/06"); see also Report and Recommendation dated November 15, 2006 (D.N.H. Doc. #5) ("Report and Recommendation of 11/15/06").  The claims against Defendant Gilbert in his official capacity were also dismissed at that time.  See id.  Defendants Rollins and Sullivan were dismissed from the case on February 20, 2007, due to insufficiency of service of process.  See D.N.H. Docket.  Subsequently, the case was referred to the District of Rhode Island due to the recusal of all of the sitting judges in the District of New Hampshire. See Order of Recusal (D.N.H. Doc. #35); Procedural Order (D.N.H. Doc. #38); Concurring Order (D.N.H. Doc. #41).  The claims against Defendant Gilbert in his individual capacity were dismissed on November 15, 2007.  See Order and Memorandum Granting Federal Defendant's Motion to Dismiss (D.N.H. Doc. #54) ("Order and Memorandum of 11/15/07").  Judgment for Defendants Lappin and Gilbert was entered on May 13, 2008, pursuant to the Order Granting Motion for Certification Pursuant to Fed. R. Civ. P. 54(b) (D.N.H. Doc. #68) accepting the Report and Recommendation of this Magistrate Judge dated April 10, 2008. See Judgment for Federal Defendants Harley G. Lappin and Robert Gilbert (D.N.H. Doc. #69).

The SCDC Defendants filed their Motion for Summary Judgment on April 4, 2008.  See D.N.H. Docket.  Plaintiff's Objection was filed on April 17, 2008.  See id.  On May 5, 2008, this Magistrate Judge issued an order directing the SCDC Defendants to

4

file an Amended SUF within twenty-one days.  See Order re
Defendants' Motion for Summary Judgment (D.N.H. Doc. #66) ("Order
of 5/5/08") at 1.  In addition, Plaintiff was directed to file a
response to the Amended SUF.  See id. at 2.  The SCDC Defendants'
Amended SUF (D.N.H. Doc. #67) was filed on May 7, 2008, followed
on May 27, 2008, by Plaintiff's Response to Amended SUF
("Response to Amended SUF").  See D.N.H. Docket.  Thereafter, all
proceedings in the matter were stayed pending resolution of the
Motion for Summary Judgment.  See Order Granting Motion to Stay
Proceedings (D.N.H. Doc. #73).

## II.  Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'"  Commercial Union
Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed.
R. Civ. P. 56(c)); accord Kearney v. Town of Wareham, 316 F.3d
18, 21 (1st Cir. 2002).  "A dispute is genuine if the evidence
about the fact is such that a reasonable jury could resolve the
point in the favor of the non-moving party.  A fact is material
if it carries with it the potential to affect the outcome of the
suit under the applicable law."  Santiago-Ramos v. Centennial
P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting
Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must
examine the record evidence "in the light most favorable to, and
drawing all reasonable inferences in favor of, the nonmoving
party."  Feliciano de la Cruz v. El Conquistador Resort & Country
Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v.
Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)).  The non-moving
party may not rest merely upon the allegations or denials in its

pleading, but must set forth specific facts showing that a
genuine issue of material fact exists as to each issue upon which
it would bear the ultimate burden of proof at trial.  See
Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53
(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106
S.Ct. 2505 (1986)).  "[T]o defeat a properly supported motion for
summary judgment, the nonmoving party must establish a
trial-worthy issue by presenting enough competent evidence to
enable a finding favorable to the nonmoving party."  ATC Realty,
LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002)(quoting
LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993))
(alteration in original)(internal quotation marks omitted).

    "[W]hen the facts support plausible but conflicting
inferences on a pivotal issue in the case, the judge may not
choose between those inferences at the summary judgment stage."
Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995).
Furthermore, "[s]ummary judgment is not appropriate merely
because the facts offered by the moving party seem more
plausible, or because the opponent is unlikely to prevail at
trial.  If the evidence presented is subject to conflicting
interpretations, or reasonable men might differ as to its
significance, summary judgment is improper."  Gannon v.
Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)
(citation and internal quotation marks omitted).

## III. Discussion

### A.    Overview

    In the Report and Recommendation of 11/15/06, Magistrate
Judge James R. Muirhead summarized the relevant background and
allegations:

> On September 24, 2003, Boulanger[] was incarcerated at
> the Strafford County House of Corrections ("SCHC") while
> awaiting trial on federal criminal charges.  From
> September of 2003 until December of 2003, Boulanger was

housed in the "all purpose room" at the SCHC, which was a gym and recreation room that had been converted to house a dozen inmates. In December of 2003, Boulanger was moved to E-Pod, a 12-cell housing unit that held twenty inmates.

In April of 2004, Boulanger alleges that he was moved to administrative segregation, and was housed in a punitive housing area. Boulanger asked a number of SCHC employees why he was transferred to punitive housing and was given answers that, although they conflicted with each other, were all based on Boulanger's allegedly maladaptive behavior at the SCHC. In any event, Boulanger reports that at no time was he provided with a classification hearing or disciplinary hearing regarding these or any charges regarding his behavior during the time he was housed at the SCHC. In July of 2004, Boulanger was moved to a new SCHC building, but was still housed in administrative segregation, which Boulanger describes as solitary confinement. Boulanger was housed in these conditions until April 2005, the duration of his stay at the SCHC.

Boulanger alleges that during the entire eighteen month period that he was held pretrial at the SCHC, he was denied the ability to exercise either indoors or outdoors, to the detriment of his physical well-being. Further, Boulanger alleges that for the last six to twelve months of his incarceration, his cell light was kept on twenty-four hours a day resulting in sleep deprivation, and that during that time he was subjected to cell searches every two hours, twenty-four hours a day. As a result, Boulanger alleges that he suffered sleep deprivation which negatively impacted his health. Again, Boulanger alleges that he was not afforded any hearing prior to being housed in conditions which resulted in punitive deprivation of sleep and humane living conditions.

Boulanger also alleges that during the last six months of his pretrial detention, he was kept chained to his bed in four-point restraints except for one hour a day when he was allowed out of his cell on his housing pod. Boulanger says that his hands and feet were even shackled together when he was eating. ... Boulanger claims this restraint amounted to pretrial punishment without the benefit of a due process hearing. Boulanger alleges that his federal criminal defense attorney witnessed him in four-point restraints "under very dangerous circumstances" and as a result filed complaints with SCHC Superintendent Dowaliby and the United States Marshal's

Service, but no action was taken to relieve Boulanger
from the restraints.

Report and Recommendation of 11/15/06 at 4-6.

**B.    Plaintiff's claims**

The following claims remain in this action: (1) that
Plaintiff was placed in punitive segregated housing without a
hearing; (2) that he was kept in excessive restraints; (3) that
he was denied exercise; and (4) that he was deprived of sleep due
to lights and searches of his cell.  See Order dated November 15,
2006 (D.N.H. Doc. #4) ("Order of 11/15/06") at 2; Report and
Recommendation of 11/15/06 at 2, 17 n.4;[7] see also Order of
12/12/06 (adopting Report and Recommendation of 11/15/06).  These
allegations are brought against the SCDC Defendants in their
individual capacities.  See Order of 11/15/06 at 2; Report and
Recommendation of 11/15/06 at 2.  All other claims have been
dismissed.  See Report and Recommendation of 11/15/06 at 2; Order
of 12/12/06 (adopting Report and Recommendation of 11/15/06);
Order and Memorandum of 11/15/07 at 3; see also D.N.H. Docket.
According to Magistrate Judge Muirhead:

> Boulanger has alleged that each of the defendants ... was
> specifically advised by Boulanger of his complaints

_____

[7] In the Report and Recommendation of 11/15/06, Magistrate
Judge Muirhead cautioned that:

> The claims as identified herein will be considered for
> all purposes to be the claims raised in the complaint.
> If Boulanger disagrees with this identification of the
> claims, he must do so by proper objection to this Report
> and Recommendation or by properly moving to amend his
> complaint.

Report and Recommendation of 11/15/06 at 7 n.2.  Plaintiff did
not file an objection to the Report and Recommendation of
11/15/06, see D.N.H. Docket, and his Motion for Leave to File an
Amended Complaint (D.N.H. Doc. #30) was denied as futile on
February 21, 2007, see id.

regarding his conditions of confinement but failed to remedy the problem. For most of the defendants to this action, Boulanger has not alleged whether they were present or directly involved in the violations alleged. Accordingly, I find that Boulanger, with a few exceptions where he has been more specific, has attempted to allege that the defendants are liable in their individual supervisory capacities for the civil rights violations alleged.

Report and Recommendation of 11/15/06 at 8; see also id. at 9 (noting that Boulanger alleged that "the violations and behavior he complains of were committed with at least the condonation or tacit authorization of defendants [Dowaliby, Lee, Roy, McPherson, and Pelkie], because Boulanger alleges that those defendants were either advised of the conditions of Boulanger's confinement or were responsible, in their roles as supervisors, for those conditions"[8]); Order of 12/12/06 (adopting Report and Recommendation of 11/15/06).

Plaintiff was a pretrial detainee at all times relevant to this matter. See Complaint at 6, 14; Amended SUF ¶ 2. The SCDC Defendants are state actors. See Complaint at 6; Report and Recommendation of 11/15/06 at 11. Therefore, Plaintiff's claims against the SCDC Defendants arise under the Fourteenth Amendment[9]

---

[8] According to the allegations in the Complaint, Defendant Dowaliby is the superintendent, Defendant Lee is a lieutenant and in charge of classification, Defendant Roy is a lieutenant and in charge of the disciplinary hearings office, Defendant McPherson is a sergeant and in charge of security, and Defendant Pelkie is a corporal and runs daily operations at the SCDC. See Complaint at 4-6. Plaintiff alleges that he submitted request slips and grievance forms to Defendant Dowaliby in an attempt to resolve the conditions of his confinement and received no reply and that he attempted to speak with Defendant Lee and Defendant Roy on numerous occasions regarding the treatment he was receiving at SCDC, again without reply. See Complaint at 11-12.

[9] The Fourteenth Amendment provides, in relevant part, that: "No State shall make or enforce any law which shall abridge the

to the U.S. Constitution and 42 U.S.C. § 1983.[10]  See Report and
Recommendation of 11/15/06 at 11 ("Boulanger asserts that [the
SCDC Defendants] are responsible, in their roles as state actors,
for violations of his federal constitutional rights at the
SC[D]C.  Accordingly, his claims against the SCDC defendants
arise under § 1983."); see also Bell v. Wolfish, 441 U.S. 520,
535 n.16, 99 S.Ct. 1861 (1979)("Due process requires that a
pretrial detainee not be punished. ...  Where the State seeks to
impose punishment without such an adjudication [of guilt], the
pertinent constitutional guarantee is the Due Process Clause of
the Fourteenth Amendment."); Surprenant v. Rivas, 424 F.3d 5, 13
(1st Cir. 2005)("A pretrial detainee has a Fourteenth Amendment
right to be free from punishment prior to conviction."); id. at

---

privileges or immunities of citizens of the United States; nor
shall any State deprive any person of life, liberty, or property,
without due process of law; nor deny to any person within its
jurisdiction the equal protection of the laws."  U.S. Const.
amend. XIV, § 1.

[10] Section 1983 provides that:

Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory
or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other
person within the jurisdiction thereof to the deprivation
of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other
proper proceeding for redress, except that in any action
brought against a judicial officer for an act or omission
taken in such officer's judicial capacity, injunctive
relief shall not be granted unless a declaratory decree
was violated or declaratory relief was unavailable.  For
the purposes of this section, any Act of Congress
applicable exclusively to the District of Columbia shall
be considered to be a statute of the District of
Columbia.

42 U.S.C. § 1983.

18 ("A pretrial detainee's claim that he has been subjected to unconstitutional conditions of confinement implicates Fourteenth Amendment liberty interests. The parameters of such an interest are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment.").

**C.    Law**

The Court of Appeals for the First Circuit has stated that:

> The government may detain one accused of a crime prior to trial in order to ensure his presence at trial. Prior to an adjudication of guilt, however, a state government may not punish a pretrial detainee without contravening the Fourteenth Amendment's Due Process Clause. The government may, however, impose administrative restrictions and conditions upon a pretrial detainee that effectuate his detention and that maintain security and order in the detention facility. When confronted with a charge by a pretrial detainee alleging punishment without due process, the "court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."

> > Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

O'Connor v. Huard, 117 F.3d 12, 16 (1st Cir. 1997)(quoting Bell v. Wolfish, 411 U.S. at 538-39 (internal citations omitted); see also Bell v. Wolfish, 441 U.S. at 535 ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the

detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.")(footnotes omitted); id. at 536-37 ("[T]he Government concededly may detain [a person lawfully committed to pretrial detention] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution."); Surprenant v. Rivas, 424 F.3d at 13 ("While a pretrial detainee may be disciplined for a specific institutional infraction committed during the period of his detention, the discipline imposed must be roughly proportionate to the gravity of the infraction.  An arbitrary, or disproportionate sanction, or one that furthers no legitimate penological objective, constitutes punishment (and, thus, is proscribed by the Fourteenth Amendment).")(internal citations omitted).  However,

> the Government must be able to take steps to maintain security and order at the institution .... Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial.

Bell v. Wolfish, 441 U.S. at 540.  Moreover,

> [i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that [s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

<u>Id.</u> at 540 n.23 (second alteration in original)(internal
quotation marks omitted).

The <u>Bell v. Wolfish</u> Court stated that it had "recognized a
distinction between punitive measures that may not
constitutionally be imposed prior to a determination of guilt and
regulatory restraints that may." 441 U.S. at 537. The Court
described the tests traditionally applied to determine whether
a governmental act is punitive in nature:

> "Whether the sanction involves an affirmative disability
> or restraint, whether it has historically been regarded as a
> punishment, whether it comes into play only on a finding of
> <i>scienter</i>, whether its operation will promote the traditional aims
> of punishment-retribution and deterrence, whether the behavior to
> which it applies is already a crime, whether an alternative purpose
> to which it may rationally be connected is assignable for it, and
> whether it appears excessive in relation to the alternative purpose
> assigned are all relevant to the inquiry, and may often point in
> differing directions."

<u>Id.</u> at 537-38 (quoting <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144,
168-69, 83 S.Ct. 554 (1963)(footnotes omitted)).

The SCDC Defendants argue that they "are entitled to summary
judgment because the restrictions on Plaintiff were based on his
escape attempt(s) and were reasonably related to the legitimate
governmental objectives of safety and security of the facility,
other inmates, and [Department of Corrections ("DOC")] staff."
Motion at 1-2. According to the SCDC Defendants:

> Restrictions on Plaintiff resulted from his being
> confined to maximum security due to escape risk, because
> of the threat to the safety and security of the facility
> which comes with escape risk. He was not placed in
> maximum security as a punishment. His placement in
> maximum security necessarily impacted his conditions of
> confinement.

Memorandum of Law in Support of Motion for Summary Judgment
("SCDC Defendants' Mem.") at 10.

**D.   Analysis of Plaintiff's claims**

13

1.  **Punitive segregated housing, excessive restraints, lack of exercise, and sleep deprivation due to disruptive searches**

Plaintiff alleges that the SCDC Defendants confined him in administrative segregation and punitive segregation from April 1st, 2004, until April 13th or 14th, 2005, without giving Plaintiff a classification hearing nor disciplinary hearing.  See Complaint ¶¶ 16, 19.[11]  Plaintiff claims that during this period he was denied access to recreation in the gym or the outside yard.  Id. ¶ 19.  Plaintiff further claims that he was kept in four-point restraints while housed in his cell, id. ¶ 25, that he was given his meals while chained hands to feet, id. ¶ 27, and that from October 2004 to April 2005 he was placed in leg irons and handcuffs, which were padlocked to a belly chain, whenever he was allowed out for tier time, see Response to Amended SUF ¶ 10.

Plaintiff additionally alleges that the SCDC "Defendants began a routine of searching Plaintiff['']s cell, every (2) two hours 24 hours a day, causing Plaintiff loss of sleep and sensory depr[i]vation and harassment."  Complaint ¶ 24; see also id. ¶ 42A (noting that the SCDC Defendants "conducted a cell search of Plaintiff every (2) two hours, 24 hours a day depriving Plaintiff of sleep").[12]  Reading Plaintiff's *pro se* pleadings and filings

---

[11] Plaintiff alleges that he was confined until April 13th, 2005, see Complaint ¶ 16, and one page later alleges that he was confined until April 14th, 2005, see id. ¶ 19.

[12] Although Plaintiff's Complaint states that the SCDC Defendants "violated Plaintiff's 4[th] Amendment, 8[th] Amendment [rights] when they (A) conducted a cell search of Plaintiff every (2) two hours, 24 hours a day depriving Plaintiff of sleep," Complaint ¶ 42, Magistrate Judge Muirhead found that:

> Boulanger has only complained of the cell searches in the context of the searches depriving him of sleep. Boulanger has not articulated a Fourth Amendment

14

generously, as it must, see Haines v. Kerner, 404 U.S. 519, 520,
92 S.Ct. 594 (1972)(noting that *pro se* complaints are "h[e]ld to
less stringent standards than formal pleadings drafted by
lawyers"), the Court interprets the statement that the searches
were "performed in [retaliatory] fashion," Response to Amended
SUF ¶ 30, to mean that the searches were performed in a manner
intended to disturb Plaintiff more than was necessary to
accomplish the legitimate objectives of the search, see Complaint
¶ 24 (alleging that Plaintiff was "harass[ed]" by the searches);
Response to Amended SUF ¶ 33 (alleging that Plaintiff was
"psychologically tormented by [the SCDC] Defendants' action").

The SCDC Defendants use the term "maximum security," SCDC
Defendants Mem. at 4, in referring to the facilities in which

---

challenge to the reasonableness of the searches. Even if
he had, however, the Supreme Court has found that an
inmate's status as a pretrial detainee does not entitle
him to the full expectation of privacy in his prison cell
that he would have in his home, and that his expectation
of privacy is "diminished" by his incarceration. Hudson
v. Palmer, 468 U.S. 517, 524 n.6 (1984) (citing Bell v.
Wolfish, 441 U.S. 520, 556-57, 560-61 (1979) (searches of
pretrial detainees' cells did not violate the Fourth
Amendment and did not constitute punishment violative of
the Due Process Clause)). The facts presented in
Boulanger's complaint are insufficient to state a claim
that the searches were unreasonable, or that Boulanger
had an expectation of privacy in his cell, and I would
have recommended that a Fourth Amendment claim
challenging the cell searches be dismissed, had it been
raised.

Report and Recommendation of 11/15/06 at 17 n.4. As noted
previously, see n.7, Magistrate Judge Muirhead stated that "[t]he
claims as identified herein will be considered for all purposes
to be the claims raised in the complaint," Report and
Recommendation of 11/15/06 at 7 n.2. This Court agrees that by
merely mentioning the Fourth Amendment without articulating an
argument as to the reasonableness of the searches Plaintiff has
waived any Fourth Amendment challenge to the searches.

Plaintiff was confined during this period, but they acknowledge
that "maximum security means being confined to a cell 23 hours
per day," id.  They also implicitly acknowledge that Plaintiff
was not given a hearing either before or after his confinement in
segregation.  See id. at 16 (arguing that "[a]ny failure to give
Plaintiff a hearing on his two escape attempts is negligent, at
most").  The SCDC Defendants further admit that Plaintiff was
"initially in handcuffs and shackles due to the escape risk,"
Amended SUF ¶ 10, but maintain that these restraints "were later
removed," id., and that he "was given the ability to exercise,
shower, have 'tier time' and normal activities accorded during
maximum security confinement," id. ¶ 9.  The SCDC Defendants
indicate that Plaintiff's status in maximum security was assessed
and reviewed periodically, see id. ¶¶ 11-13, but Plaintiff
disputes this, see Response to Amended SUF ¶¶ 11-13.  The SCDC
Defendants further indicate that Plaintiff was uncooperative in
maximum security and that his behavior did not warrant a change
in his security status, see Amended SUF ¶ 14, but again this fact
is disputed by Plaintiff, see Response to Amended SUF ¶ 14.

The SCDC Defendants acknowledge that correctional officers
performed regular cell checks and/or searches of Plaintiff's
cell, including at night.  Amended SUF ¶ 29.  They state that the
cell checks were done because Plaintiff was viewed as an escape
risk, id. ¶ 30, a fact which Plaintiff disputes, see Response to
Amended SUF ¶ 30 (stating that the cell searches were "performed
in reta[]l[i]ation fashion").[13]  Although in the Declaration of
Steven Pollard ("Pollard Decl.") it is noted that he conducted
cell checks "in the ordinary fashion and other officers and I

_____

[13] As noted previously, prior to April 1, 2004, Plaintiff's
cell was checked or searched with the same frequency as those of
other inmates, but thereafter such checks were done more
regularly.  Amended SUF ¶¶ 31-32; see also n.6.

conducted these cell[] check[s] in a manner to minimize any
disturbance to inmate Boulanger or other inmates, while still
accomplishing the goals of the cell check," Pollard Decl. ¶ 8,
the SCDC Defendants failed to include these facts in their
Amended SUF.  Thus, Plaintiff was not required to specifically
respond to them, and these assertions cannot be considered
undisputed.  Similarly, while the SCDC Defendants' Mem. and the
various declarations contain information supporting the SCDC
Defendants' "concern over Plaintiff's conduct," Amended SUF ¶ 32,
again these "facts" were not included in the SCDC Defendants'
Amended SUF and cannot be viewed as undisputed.

Bell v. Wolfish teaches that punishment cannot be inflicted
upon pretrial detainees prior to an adjudication of guilt in
accordance with due process of law.  Collazo-Leon v. U.S. Bureau
of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).  However, the
court's inquiry does not end with the designation of a condition
of confinement as "punishment."  Id.  Thus, the fact that a pre-
trial detainee may be confined without a hearing in a facility
which bears the appellation "punitive segregation" does not
necessarily establish a constitutional violation.  See Bell v.
Wolfish, 441 U.S. at 539 ("[I]f a particular condition or
restriction of pretrial detention is reasonably related to a
legitimate governmental objective, it does not, without more
amount to punishment."); id. at 539 n.20 ("[I]n the absence of a
showing of intent to punish, a court must look to see if a
particular restriction or condition, which may on its face appear
to be punishment, is instead but an incident of a legitimate
nonpunitive governmental objective."); see also Smith v. Kurmis,
No. 3:06-CV-464 AS, 2006 WL 2246412, at *1 (N.D. Ind. Aug. 3,
2006)("[N]ot every placement of a pre-trial detainee in
segregation constitutes punishment, and the segregation of a pre-
trial detainee for legitimate security reasons without a hearing

17

does not violate due process.")(citing <u>Zarnes v. Rhodes</u>, 64 F.3d
285, 291 & n.5 (7th Cir. 1995)); <u>Zimmerman v. Tippecanoe
Sheriff's Dep't.</u>, 25 F.Supp.2d 915, 921 (N.D. Ind. 1998)
(concluding that defendants' placement of inmate "with a
propensity for escape attempts, in more secure housing without a
hearing, and requiring that he wear leg irons when out of his
cell, did not constitute punishment and did not violate his
Fourteenth Amendment rights"). <u>But see</u> <u>Bell v. Wolfish</u>, 441 U.S.
at 539 n.20 ("Conversely, loading a detainee with chains and
shackles and throwing him in a dungeon may ensure his presence at
trial and preserve the security of the institution. But it would
be difficult to conceive of a situation where conditions so
harsh, employed to achieve objectives that could be accomplished
in so many alternative and less harsh methods, would not support
a conclusion that the purpose for which they were imposed was to
punish.").

The government has a valid interest in managing detention
facilities and, towards that end, may employ administrative
measures that may be discomforting or are of a nature that a
detainee would not experience if he were released while awaiting
trial. <u>O'Connor v. Huard</u>, 117 F.3d at 16 (citing <u>Bell v.
Wolfish</u>, 441 U.S. at 540). "Barring 'substantial evidence' that
an administrative measure is an exaggerated response to these
considerations, 'courts should ordinarily defer to their expert
judgment in such matters.'" <u>Id.</u> (citing <u>Bell v. Wolfish</u>, 441
U.S. at 540 n.23).

There is no evidence in the record that the SCDC Defendants
confined Plaintiff in administrative or punitive segregation
because of an expressed intent to punish him. Thus, the Court's
inquiry here is whether the SCDC Defendants' confinement of
Plaintiff in segregation was reasonably related to a legitimate
governmental purpose and whether the confinement in segregation

appears excessive in relation to that purpose.  O'Connor v. Huard, 117 F.3d at 16; see also Bell v. Wolfish, 441 U.S. at 538.

The SCDC Defendants have submitted an affidavit from Warren Dowaliby, the Superintendent of the SCDC, stating that he ordered Plaintiff placed in maximum security because he viewed Plaintiff as an escape risk, see Dowaliby Decl. ¶¶ 12-13, and the reasons he held this belief, see id. ¶¶ 8-11, 14, 29-35.  Defendant Dowaliby further states that he ordered Plaintiff confined to maximum security for security reasons.  Id. ¶ 12.  Preventing escape is a legitimate governmental objective.  See Bell v. Wolfish, 441 U.S. at 547 ("Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry.").  However, almost all of the facts on which the SCDC Defendants rely to support their contention that Plaintiff posed a security risk are disputed by Plaintiff.[14]  See Plaintiff's Response to Amended SUF ¶¶ 3, 5-17, 19-21, 24-26.  In particular, Plaintiff disputes that he tried to escape twice, see id. ¶ 20, and disputes that he did not cooperate while in maximum security or show progress warranting a change in his security status, see id. ¶ 14.

At this point in the litigation, the only undisputed facts supporting Plaintiff's confinement in segregation are: 1) that as a federal detainee he posed an enhanced escape risk compared to

---

[14] In addition, the SCDC Defendants repeatedly cite to declarations for various facts, see, e.g., SCDC Defendants' Mem. at 6-7, but the SCDC Defendants failed to include these facts in their Amended SUF.  Thus, Plaintiff was not required to respond to them, and the Court cannot find that these facts (which admittedly, are highly supportive of the SCDC Defendants' position) are undisputed.

SCDC convicted prisoners;[15] 2) that in late March 2004 a
confidential informant provided false information which
implicated Plaintiff in plans for an escape;[16] and 3) that in
October 2004 the SCDC Defendants discovered that the window in
the cell occupied by Plaintiff and by at least one other inmate[17]
was broken out, that an iron bar in the window was bent and
gouged, and that in Plaintiff's trash can there was broken glass,
a towel with blood on it, and sheets tied together to make a
rope.  While these facts might barely be sufficient to permit a
finding that Plaintiff's confinement in segregation was not
imposed as punishment but for the alternative purpose of
preventing his escape, see Bell v. Wolfish, 441 U.S. at 538, its
duration for 379 days without a hearing and under the conditions
Plaintiff alleges "appears excessive," id., in relation to that
alternative purpose, id.

The Supreme Court in Bell v. Wolfish attached significance
to the fact that for most inmates the conditions at issue did not
extend beyond sixty days.  441 U.S. at 543 (stating that the

---

[15] This fact is not contained in the Amended SUF.  However,
Plaintiff's status as a federal detainee facing the possibility
of a long sentence if convicted of the then pending charges is
indisputable.

[16] The Court refers to the information provided by the
confidential informant as "false" because Plaintiff disputes that
there was any truth to it.  See Plaintiffs' Response to Amended
SUF ¶ 5 (stating that the confidential informant "fabricated a
hoax by providing ... a fabricated story about an escape plan
which he himself concocted ....").  Accordingly, for purposes of
the instant Motion, the Court must treat this information as
false.

[17] Plaintiff disputes that the cell was occupied solely by
himself and disputes that he was the only one with access to it.
See Plaintiff's Response to Amended SUF ¶ 21.  For purposes of
the instant Motion, the Court must assume the truth of
Plaintiff's denials.

Court's conclusion of no constitutional violation "is further
buttressed by the detainees' length of stay at the [Metropolitan
Correctional Center ("MCC")].  Nearly all of the detainees are
released within sixty days"); see also id. at 525 n.3.
Plaintiff's confinement in segregation is more than six times
that period.  See Surprenant v. Rivas, 424 F.3d at 20 (noting
that unpleasant conditions of confinement "might be tolerable for
a few days and intolerably cruel for weeks and months")(quoting
Hutto v. Finney, 437 U.S. 678, 687, 98 S.Ct. 2565 (1978)).

While courts should ordinarily defer to the expert judgment
of corrections officials in determining whether conditions of
confinement are reasonably related to the Government's interest
in maintaining security and order in correctional institutions,
see id. at 540 n.23, here the length of Plaintiff's confinement,
without a hearing of any type, under the conditions Plaintiff
alleges is sufficient to remove this case from the ordinary.
Accepting Plaintiff's allegations as true (and disregarding the
disputed facts on which the SCDC Defendants rely to justify his
confinement, see Kiman v. New Hampshire Dep't of Corr., 451 F.3d
274, 282 (1st Cir. 2006)(stating that at the summary judgment
stage the Court must view the facts in the light most favorable
to Plaintiff), this Court finds that Plaintiff's placement in
segregation for 379 days, without any hearing, under the
conditions claimed by Plaintiff, appears excessive in relation to
the alternative purpose of preventing his escape, Bell v.
Wolfish, 441 U.S. at 538.  The Court further finds that the
length of the confinement, the lack of any hearing, and the harsh
conditions alleged by Plaintiff constitute "substantial evidence"
that the SCDC Defendants "exaggerated their response to [the
consideration of preventing Plaintiff's escape] ...."  Id. at 5
n.23; cf. Colon v. Howard, 215 F.3d 227, 231 (2nd Cir. 2000)
("Confinement in [segregated housing] for 305 days is in our

21

judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under Sandin [v. Conner,[18] 515 U.S. 472, 115 S.Ct. 2293 (1995)].");  Kalwasinski v. Morse, 201 F.3d 103, 106 (2nd Cir. 1999)(finding that district court improperly concluded that convicted prisoner's "180 days confinement in [special housing unit ("SHU")] was not an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life'")(quoting Sandin, 515 U.S. at 484)(second alteration in original; Lee v. Coughlin, 902 F.Supp. 424, 431 (S.D.N.Y. 1995)(finding that plaintiff's "confinement for 376 days in SHU imposed an atypical and significant hardship on plaintiff").

Accordingly, the SCDC Defendants are not entitled to summary judgment to the extent that Plaintiff's claims are based on his placement in punitive segregated housing, excessive restraints, lack of exercise, and sleep deprivation due to disruptive searches.

### 2.    Sleep deprivation due to lights

Plaintiff also alleges that "[t]he light was kept on in Plaintiff['']s cell 24 hours a day preventing healthy sleep or rest[.]"  Complaint ¶ 20.  The SCDC Defendants respond that "[t]he DOC has low wattage overhead lights in every cell which stay on through the night after the regular lights go off,"

---

[18] It bears noting Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293 (1995), involved a convicted prisoner and not a pretrial detainee.  See Surprenant v. Rivas, 424 F.3d at 17 ("Pretrial detainees, unlike convicts, have a liberty interest in avoiding punishment—an interest that derives from the Constitution itself.");  see also Iqbal v. Hasty, 490 F.3d 143, 163 (2nd Cir. 2007)("This Court has said that Sandin does not apply to pretrial detainees and that, accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships by state deprivation of a liberty interest protected by procedural due process.").

Amended SUF ¶ 27 (citing Dowaliby Decl. ¶ 39), and that "[t]he
lights remain on for safety and security," id. ¶ 28 (citing
Dowaliby Decl. ¶ 41).[19]  Plaintiff does not dispute these
statements.  See Response to Amended SUF ¶¶ 27-28.

        "[T]he effective management of the detention facility once
the individual is confined is a valid objective that may justify
imposition of conditions and restrictions of pretrial detention
and dispel any inference that such restrictions are intended as
punishment."  Bell v. Wolfish, 441 U.S. at 540; see also id.
("Restraints that are reasonably related to the institution's
interest in maintaining jail security do not, without more,
constitute unconstitutional punishment, even if they are
discomforting and are restrictions that the detainee would not
have experienced had he been released while awaiting trial.").

> In Bell, the Court stated that, [p]rison administrators
> ... should be accorded wide-ranging deference in the
> adoption and execution of policies and practices that in
> their judgment are needed to preserve internal order and
> discipline and to maintain institutional security. Such
> considerations are peculiarly within the province and
> professional expertise of corrections officials, and, in
> the absence of substantial evidence in the record to
> indicate that the officials have exaggerated their
> response to these considerations, courts should
> ordinarily defer to their expert judgment in such
> matters.

Thomas v. Ramos, 130 F.3d 754, 759 (7th Cir. 1997)(quoting Bell
v. Wolfish, 441 U.S. at 547-48)(alterations in original)(internal
citations and quotation marks omitted); see also Roberts v. Rhode
Island, 239 F.3d 107, 110 (1st Cir. 2001)(noting that rights
retained by convicted prisoners and pretrial detainees "may be
subject to restrictions and limitations based on the fact of

_____

[19] Defendant Dowaliby notes that "[t]he DOC provides inmates
with eyeshades if requested, due to the night lights."  Dowaliby
Decl. ¶ 44.

confinement, the legitimate goals and policies of the penal
institution, and the need of the institution to maintain security
and internal order"); O'Connor v. Huard, 117 F.3d at 16 ("The
government has a valid interest in managing the detention
facility and, toward that end, may employ administrative measures
that may be discomforting or are of a nature that the detainee
would not experience if he were released while awaiting trial.").
Institutional restrictions "must be evaluated in the light of the
central objective of prison administration, safeguarding
institutional security." Roberts v. Rhode Island, 239 F.3d at
110.

Here, the Court finds that the low-wattage twenty-four hour
lights of which Plaintiff complains are consistent with the valid
objective of managing the detention facility and maintaining
prison security. There is no evidence in the record that the
SCDC Defendants' undisputed statement that "[t]he lights remain
on for safety and security," Amended SUF ¶ 28, is in any way
exaggerated. Therefore, the Court finds that to the extent that
Plaintiff's sleep deprivation claim is based on lights, the claim
should not go forward. The deference which the Court owes to
prison officials requires this result. See Bell v. Wolfish, 441
U.S. at 540 n.23 (noting that courts should ordinarily defer to
correctional officials' expert judgment); id. at 547 (same);
Roberts v. Rhode Island, 239 F.3d at 110 (noting that evaluation
"is a deferential one, giving due regard to the 'professional
expertise of corrections officials'")(quoting Bell v. Wolfish,
441 U.S. at 548).

**E. Qualified Immunity**

The SCDC Defendants argue in the alternative that, even if
Plaintiff's confinement in segregation constituted punishment and
required a hearing, they are entitled to qualified immunity.
Defendant Dowaliby states that he "was not aware of an alleged

constitutional requirement to provide a hearing for an inmate who was reclassified to maximum security status due to a security issue."  Dowaliby Decl. ¶ 52.

"Qualified immunity 'protects public officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'"  Surprenant v. Rivas, 424 F.3d at 14 (quoting Cox v. Hainey, 391 F.3d 25, 29 (1st Cir. 2004)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727)(1982))).

> In determining whether a public official has violated a clearly established right, a court asks "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right."

Id. at 14-15 (quoting Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004)).

### 1.  Constitutional Violation

The Court has already determined that Plaintiff's confinement in segregation for 379 days, without a hearing, under the conditions he alleges establishes a constitutional violation.[20]  Id. at 15; see also Report and Recommendation of 11/15/06 at 14 ("It goes without saying that a pretrial prisoner who is denied any hearing at all prior to the imposition of punishment was denied the due process guaranteed by Wolff [v. McDonnell, 418 U.S. 539, 564, 94 S.Ct. 2963 (1974)]."). Thus,

---

[20] It bears emphasizing that if any of the disputed facts on which the SCDC Defendants rely to justify Plaintiff's confinement in segregation are established at trial, there may be no constitutional violation.

Plaintiff has stated a constitutional violation.  See Surprenant
v. Rivas, 424 F.3d at 17 ("Pretrial detainees, unlike convicts,
have a liberty interest in avoiding punishment–an interest that
derives from the Constitution itself.")(citing Sandin v. Connor,
515 U.S. 472, 484, 115 S.Ct. 2293 (1995)(citing Bell v. Wolfish,
441 U.S. at 535, for proposition that a pretrial detainee "may
not be punished prior to an adjudication of guilt in accordance
with due process of law")).

> In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41
> L.Ed.2d 935 (1974), the Supreme Court set forth the due
> process requirements associated with prison disciplinary
> hearings.  Those requirements include written notice of
> the charges at least twenty-four hours in advance of the
> hearing, id. at 564, 94 S.Ct. 2963, and the ability to
> call witnesses and present documentary evidence, id. at
> 566, 94 S.Ct. 2963.

Surprenant v. Rivas, 424 F.3d at 16.


### 2.  Clearly Established

As to whether the constitutional right in question was
clearly established, the Court of Appeals for the First Circuit
stated in Surprenant v. Rivas that:

> Wolff has long established the level of due process
> required before a pretrial detainee can be deprived of a
> liberty interest in a disciplinary hearing, see 418 U.S.
> at 564-71, 94 S.Ct. 2963, and, thus, the procedural due
> process rights asserted by the plaintiff were clearly
> established in 2002.  See Collazo-Leon, 51 F.3d at 319
> (holding that pretrial detainees must receive
> disciplinary hearings comporting with due process); see
> also Benjamin [v. Fraser], 264 F.3d [175,] 189-90 [(2nd
> Cir. 2001)](holding that "the procedures required by
> Wolff apply if the restraint on [a pretrial detainee's]
> liberty is imposed for disciplinary reasons"); Mitchell
> [v. Dupnik], 75 F.3d [517,] 525 [(9th Cir. 1996)]
> (similar).

424 F.3d at 18 (fourth alteration in original).  Wolff v.

McDonnell was decided in 1974. See 418 U.S. 539, 94 S.Ct. 2963 (1974). Petitioner was incarcerated at the SCDC from October 2003 to April 2005. Therefore, the Court concludes that a pretrial detainee's right to a disciplinary hearing before being punished was clearly established.

### 3.  Reasonable Official

Finally, the Court must evaluate "whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Surprenant v. Rivas, 424 F.3d at 15. In the circumstances of this case, the question is whether, considering solely the undisputed evidence, the SCDC Defendants should have understood that confining Plaintiff in segregation for 379 days, without a hearing of any type and under the conditions he has alleged, violated his right to be free from punishment without a hearing. The Court concludes that they should have.

The United States Supreme Court said in 1983 that prisoners confined to administrative segregation must be given periodic reviews to insure that administrative segregation is not used as a pretext for indefinite confinement of an inmate. Hewitt v. Helms, 459 U.S. 460, 477 n.9, 103 S.Ct. 864 (1983). While the SCDC Defendants indicate that Plaintiff's status in segregation was reassessed periodically, see SUF ¶¶ 11-17, 19, Plaintiff disputes this, see Plaintiff's Response to Defendant's Amended SUF ¶¶ 11-17, 19. The Supreme Court also made clear in Bell v. Wolfish that the length of time a pretrial detainee is subjected to a particular condition of confinement bears upon whether there is a constitutional violation, 441 U.S. at 543 (finding no constitutional violation in "requiring a detainee to share toilet facilities and ... small sleeping place with another person for generally a maximum period of 60 days"); id. at 552 ("We are also

influenced in our decision by the fact that the rule's impact on pretrial detainees is limited to a maximum period of approximately 60 days."); id. at 555 n.35 ("With regard to pretrial detainees, we again note that this restriction affects them for generally a maximum of sixty days."); id. at 562 (noting again that "these restrictions were of only limited duration so far as the MCC pretrial detainees were concerned").

Considering the undisputed fact that Plaintiff was held for 379 days in segregation without a hearing and assuming the truth of Plaintiff's allegations regarding the conditions of that confinement, the defense of qualified immunity is unavailable to the SCDC Defendants.  Cf. Magluta v. Samples, 375 F.3d 1269, 1283 (11th Cir. 2004)(concluding "that ample federal law existed at the time of the challenged conduct to give fair warning to the defendants that it was unconstitutional to hold [plaintiff] in solitary confinement for 500 days for the purpose of punishment[21] and with virtually no procedural protection in the form of periodic reviews"); Tellier v. Fields, 280 F.3d 69, 85 (2nd Cir. 2000)(rejecting qualified immunity defense where Plaintiff was confined in administrative segregation for 514 days without a hearing).  But see Rapier v. Harris, 172 F.3d 999, 1006 (7th Cir. 1999)(concluding that defendants who confined pretrial detainee in solitary confinement for 270 days without a hearing enjoyed qualified immunity because at the time they acted: 1) it

---

[21] It bears noting that the defendants in Magluta v. Samples, 375 F.3d 1269 (11th Cir. 2004), did not admit that the plaintiff had been placed in solitary confinement as punishment. Rather, the Court of Appeals concluded that Plaintiff's allegation gave rise to a reasonable inference that his placement in solitary confinement was for that purpose.  Id. at 1275. Similar to the instant matter, the plaintiff in Magluta had alleged that the defendants' "escape concern was based on false and fabricated information without even minimal indicia of reliability ...."  Id. at 1274.

did not appear that the law was sufficiently clear to apprise
them that maintaining Plaintiff in solitary segregation was not
sufficiently related to the legitimate governmental purpose of
maintaining good order and discipline or that it was excessive in
light of that objective, 2) it was not clearly established that
certain procedural protections must attend any disciplinary
measures taken against pretrial detainees, and 3) it was not
"clearly established how one ought to differentiate between
administrative action designed to assure the safe running of the
facility and punitive action").[22]

### F.  Damages

The SCDC Defendants contend that Plaintiff has no claim for
compensatory damages because he has not suffered any physical
injury.  See SCDC Defendants' Mem. at 20.  They cite the
following provision of the Prison Litigation Reform Act ("PLRA"):

> (e) Limitation on recovery
>
> No Federal civil action may be brought by a prisoner
> confined in a jail, prison, or other correctional
> facility, for mental or emotional injury suffered while
> in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Plaintiff disputes that he did not sustain physical injury
while at SCDC.  See Response to Amended SUF ¶ 33.  He claims that

---

[22] It appears that the Rapier court, in finding that no
"reasonable person would have considered the decision to
segregate [plaintiff] to be unnecessary," Rapier v. Harris, 172
F.3d 999, 1006 (7th Cir. 1999), treated the fact that he had
stabbed another inmate with a broken broom handle as an
established fact, see id. at 1001-02 (stating this in "Facts"
section of opinion).  Here, in contrast, virtually all of the
facts which would allow a reasonable person to conclude that
Plaintiff's confinement in segregation, under the conditions
alleged, was necessary are disputed.

he "suffered muscle atr[o]phy and still does as a result of
Defendants['] actions as alleged in his complaint.  Plaintiff
suffers loss of feeling and tingling sensations in his arms from
excessive use of restraints ...."  Id.  However, Plaintiff
previously answered Interrogatory 8 by indicating that he had no
physical problems while at SCDC.  See Declaration of Corey
Belobrow ("Belobrow Decl."), Att. A at 3 (Plaintiff's handwritten
response to Interrogatory 8).  Plaintiff cannot create a material
issue of fact by contradicting his previous response to an
interrogatory.  See Torrech-Hernández v. Gen. Elec. Co., 519 F.3d
41, 47 (1st Cir. 2008)("a party opposing summary judgment may not
manufacture a dispute of fact by contradicting his earlier sworn
testimony")(quoting Abreu-Guzman v. Ford, 241 F.3d 69, 74 (1st
Cir. 2001)); Melanson v. Browning-Ferris Indus., Inc., 281 F.3d
272, 277 n.5 (1st Cir. 2002)("A party may not create an issue of
fact by submitting an affidavit in opposition to a summary
judgment motion that clearly contradicts the affiant's previous
deposition testimony."); Angel Med. Ctr., Inc. v. Abernathy, 1
Fed. App. 217 (4th Cir. 2001)(unpublished opinion)(finding that
plaintiff's bald and self-serving allegations which contradicted
his previous response to an interrogatory was insufficient to
avoid summary judgment); Acas v. Connecticut Dep't of Corr.,
Civil No. 3:06cv1855 (JBA), 2008 WL 4479111, at *8 (D. Conn.
Sept. 8, 2008)("Mr. Acas's own affidavit will not be permitted to
oppose summary judgment because it directly contradicts his prior
sworn deposition and interrogatory responses which clearly state
that he made no accomodation requests to the DOC after October
2002.").

Thus, to the extent that Plaintiff contends he suffered
physical injury due to lack of exercise and restraints, the Court
disregards such contention because it contradicts plaintiff's
earlier answer to Interrogatory 8.  See Hill v. Bowles, No. 1-04-

1151-T-AN, 2005 WL 1420864, at *3 (W.D. Tenn. June 15, 2005)
(striking all portions of plaintiffs' affidavits that
contradicted their answers to interrogatories or deposition
testimony); Stone-Graves v. Cooperate Elevator Co., No. 01-CV-
74280-DT, 2003 WL 1867921, at *3 (E.D. Mich. Mar. 12, 2003)
(disregarding plaintiff's affidavit to the extent that it
contradicted her earlier answers to interrogatories); see also
Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 33 n.5 (1st Cir.
2008)(refusing to credit new allegations in unsworn affidavit
which were at odds with prior deposition testimony).

        Thus, because Plaintiff suffered no physical injury, he may
not recover compensatory damages for any mental or emotional
injury.  See Oliver v. Keller, 289 F.3d 623, 629 (9th Cir. 2002)
("§ 1997e(e) applies only to claims for mental and emotional
injury").  However, Plaintiff's claims for nominal or punitive
damages based on violations of his Fourteenth Amendment rights
are not barred by § 1997e(e).  See Mayfield v. Texas Dep't of
Criminal Justice, 529 F.3d 599, 605-06 (5th Cir. 2008)("Despite
the limitations imposed by § 1997e(e), we have recognized that a
prisoner can, absent a showing of physical injury, pursue
punitive or nominal damages based upon a violation of his
constitutional rights."); Munn v. Toney, 433 F.3d 1087, 1089 (8th
Cir. 2006)("§ 1997e(e) does not bar recovery of nominal and
punitive damages, or declaratory and injunctive relief"); Hubbard
v. Taylor, 399 F.3d 150, 167 n.24 (3rd Cir. 2005)("§ 1997e(e)
does not bar claims seeking nominal damages to vindicate
constitutional rights, nor claims seeking punitive damages");
Calhoun v. Detella, 319 F.3d 936, 941 (7th Cir. 2003)(noting "an
emerging view that § 1997e(e) ... limits recovery for mental and
emotional injury, but leaves unaffected claims for nominal and
punitive damages, which seek to remedy a different type of

31

injury")(internal quotation marks omitted).[23]

## IV.  Summary

### A.  Punitive segregated housing, excessive restraints, lack of exercise, and sleep deprivation due to disruptive searches

As to these claims, the actions of the SCDC Defendants "appear[] excessive," Bell v. Wolfish, 441 U.S. at 538, in relation to the legitimate government purpose of preventing Plaintiff's escape, see id.  In addition, the SCDC Defendants are not entitled to qualified immunity because they should have understood that such confinement under the conditions alleged by Plaintiff violated his constitutional rights.  Accordingly, as to these claims the Motion should be denied.

### B.  Sleep deprivation due to lights

To the extent that this claim is based on the lights being kept on in Plaintiff's cell twenty-four hours a day, the Motion should be granted as the low-wattage lights are consistent with the valid objective of managing the detention facility and maintaining prison security.  To the extent this claim is based on searches of Plaintiff's cell conducted every two hours twenty-four hours a day in a manner intended to disrupt Plaintiff's sleep, the Motion should be denied as there are disputed issues of material fact regarding the frequency and manner in which the searches were conducted.

---

[23] The SCDC Defendants also argue that Plaintiff cannot prove any facts to show that his PTSD (post-traumatic stress disorder) is related to his status while at SCDC.  Defendants' Mem. at 21-22.  In addition, they also argue that Plaintiff's PTSD preexisted his maximum security confinement.  See id. at 22.  Because these matters bear only on the issue of damages and the Court has already determined that Plaintiff is precluded from recovering compensatory damages, the Court finds it unnecessary to address these additional arguments in this Report and Recommendation.

### C. Damages

Because Plaintiff suffered no physical injury, 42 U.S.C. §
1997e(e) bars him from recovering compensatory damages for mental
or emotional injury. However, Plaintiff's claims for nominal and
punitive damages remain.

## V. Conclusion

As stated above, I recommend that the SCDC Defendants'
Motion for Summary Judgment be denied in part and granted in
part. Any objections to this Report and Recommendation must be
specific and must be filed with the Clerk of Court within ten
(10)[24] days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. LR
Cv 72(d). Failure to file specific objections in a timely manner
constitutes waiver of the right to review by the district court
and of the right to appeal the district court's decision. See
United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986);
Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st
Cir. 1980).


/s/ David L. Martin
United States Magistrate Judge
March 25, 2009

---

[24] The ten days do not include intermediate Saturdays,
Sundays, and legal holidays. See Fed. R. Civ. P. 6(a).